IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> DARREL DEAN GUINN, <br><br> Defendant. | Case No. 22-CR-201-JFH |

## OPINION AND ORDER

Before the Court is a Notification of Intention to Introduce Evidence Pursuant to Federal Rules of Evidence 414, 413 and 404(b) ("Notice") filed by the United States of America ("Government"), as well as a Supplemental Notice with exhibits attached. Dkt. Nos. 25, 31. Defendant Darrel Dean Guinn ("Defendant") has not filed an objection to the Government's Notice. However, pursuant to *Benally*, the Court must still fully evaluate the evidence and make a clear record of its reasoning before allowing admission. *United States v. Benally*, 500 F.3d 1085 (10th Cir. 2007). For the reasons stated, the evidence described in the Notice is ADMISSIBLE, IN PART, and INADMISSBLE, IN PART.

## BACKGROUND

### I. Procedural Background

Defendant was charged by Indictment filed July 5, 2022 with four counts: (1) Aggravated Sexual Abuse of a Minor Under 12 in Indian Country, in violation of 18 U.S.C. §§ 1151, 1153, and 2241(c); (2) Coercion and Enticement of a Minor in Indian Country, in violation of 18 U.S.C. §§ 1151, 1153, and 2422(b); (3) Abusive Sexual Contact with a Minor in Indian Country, in violation of 18 U.S.C. 1151, 1153, and 2244(a)(3); and (4) Coercion and Enticement of a Minor in Indian Country, in violation of 18 U.S.C. 1151, 1153, and 2422(b). Dkt. No. 2. The Government

filed its Notice describing multiple other alleged acts by Defendant that it intends to introduce at trial. Dkt. No. 25. The Government supplemented its Notice with evidence including: a Muscogee Nation Lighthorse Police Report dated August 2, 2021, a witness statement provided by K.L.'s mother dated August 2, 2021, a Sexual Assault Nurse Examiner Report by Brandy Treagesser, R.N. dated August 3, 2021, a DVD audio interview of G.T., and Federal Bureau of Investigation 302 Reports for K.L., L.G., Z.G., M.D.L., L.J.G., M.B., G.T., Z.D.G., and Defendant. Dkt. No. 31. This case is set for trial on January 17, 2023. *See* Dkt. No. 30.

## II. Factual Background

### A. Charged conduct

#### 1. Allegations related to K.L.

Defendant allegedly sexually abused his step-daughter, K.L., on three (3) separate occasions when she was ten- or eleven-years-old, between approximately 2020 and 2021. Dkt. No. 25 at 2. K.L. described the alleged abuse in a forensic interview. *Id*. First, when K.L. was home sick from school Defendant allegedly "pulled down her pants and 'put his dick' in her." Dkt. No. 31-7 at 2-3. When Defendant was finished, he told her not to tell anyone. *Id*. at 3. Next, in that same timeframe, Defendant allegedly followed K.L. into the bathroom and "touched her 'nipples' with his hands [and] shoved his 'finger in [K.L.'s] butterfly' and was going 'up and down.'" *Id*. K.L. attempted to get away from Defendant "but he pulled her back and put his 'dick' inside her." *Id*. Finally, K.L. was in bed in her bedroom when Defendant allegedly entered, "took off her covers, and 'put his face between there' and 'used his tongue to lick' her genitals." Dkt. No. 31-7 at 3-4.

#### 2. Allegations related to L.G.

Defendant allegedly sexually abused and enticed his biological daughter, L.G. Dkt. No. 25 at 2. L.G. disclosed during a forensic interview that when she was fourteen-years-old, in

approximately January 2021, Defendant asked her "if he 'could do inappropriate things' to her," describing his question as "sexual." Dkt. No. 31-5 at 2. Another time later that year when L.G. was still fourteen-years-old, she was lying in Defendant's bed watching a movie. *Id*. at 3. While lying on her side, Defendant allegedly "'humped' her back while they were both clothed." *Id*. L.G. stated that she "could feel 'his lower half against [her] rear.'" *Id*.

### 3. Allegations related to Z.G.

Defendant allegedly coerced and enticed his biological daughter, Z.G. Dkt. No. 25 at 3. Z.G. disclosed in a forensic interview that in approximately 2020, when she was seventeen-years-old, Defendant propositioned her for sex. Dkt. No. 31-6 at 2. Z.G. told him "it" would never happen. *Id*. Another time in approximately 2021, Z.G. was lying in bed with L.G and Defendant allegedly "humped L.G. and Z.G." *Id*. at 3. Z.G. stated that "[s]he could feel his 'lower body' coming into contact with [her] lower backside" and that Defendant was "mov[ing] back and forth." Z.G. further "described his actions as a 'thrust' and reported that [Defendant] used his 'crotch area.'" *Id*.

## B. Other act evidence

The Government plans to present evidence of several other types of conduct under Rules 413/414 and/or Rule 404(b) and as *res gestae* evidence.

### 1. Allegations related to M.B.

Between 1998 and 2001, Defendant allegedly sexually abused his biological sister, M.B., when she was between the ages of six and nine-years-old. Dkt. No. 25 at 3. The Government states that M.B. will testify that Defendant "anally raped her . . . ranging from every couple of weeks to monthly" during this timeframe. *Id*. The Government further states that Defendant admitted in his forensic interview to at least some of the sexual acts with M. B., stating that M.B.'s

accounts of what he did were "possible" and that he had seen M.B. in a "top-down view" that he has only ever seen "with other sexual partners." *Id*.

### 2. Allegations related to L.J.G.

Defendant allegedly sexually abused his half-sister, L.J.G. when they were juveniles. Dkt. No. 25 at 3-4. The Government states that L.J.G. will testify that Defendant "molested her . . . and that he exposed himself" to her when she was approximately five-years-old and Defendant was approximately thirteen-years-old. *Id*.

### 3. Allegations related to G.T.

Defendant allegedly sexually abused his ex-girlfriend G.T. between 2009 and 2018. Dkt. No. 25 at 4. The Government states that G.T. will testify that while dating Defendant, "he would rape her practically 'nightly'" after she had gone to bed. *Id*.

### 4. Allegations related to other sexual conduct

Defendant allegedly spoke about his sex life in front of his children and told them that he was "bored and horny" and "incest is best." Dkt. No. 25 at 3. Defendant also allegedly flirted with minors at work, "including making comments about a 14-year-old coworker's breasts." *Id*. at 4. Finally, Defendant allegedly watched porn in a McDonald's and also masturbated and watched porn in his van while in public. *Id*.

## AUTHORITY AND ANALYSIS

### I. Rule 413/414

#### A. *Benally* legal standard

The Federal Rules of Evidence generally prohibit "the admission of evidence for the purpose of showing a defendant's propensity to commit bad acts." *United States v. Benally*, 500 F.3d 1085, 1089 (10th Cir. 2007) (citing Fed. R. Evid. 404(a)). However, "[i]n a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant

committed any other sexual assault. The evidence may be considered on any matter to which it is relevant." Fed. R. Evid. 413(a). "Rule 414(a) contains identical language related to accusations of child molestation." *Benally*, 500 F.3d at 1090. Because the language and standards are identical, the Court adopts the Tenth Circuit's convention of referencing evidence offered under either of these provisions as "Rule 413/414 evidence." *See id.*

> Rule 413/414 evidence
>
>> must meet three threshold requirements before it may be considered for admission . . .
>>
>> (1) the defendant is accused of a crime involving sexual assault or child molestation;
>>
>> (2) the evidence proffered is evidence of the defendant's commission of another offense or offenses involving sexual assault or child molestation; and
>>
>> (3) the evidence is relevant.

*Id.* Once evidence meets *Benally*'s initial requirements, it is still "subject to the Rule 403 balancing test, which permits the exclusion of relevant evidence, if its probative value is substantially outweighed by the danger of unfair prejudice." *Id.* (internal quotation marks and citation omitted); *see* Fed. R. Evid. 403.

### B. *Benally* analysis

*Benally* first requires a defendant be accused of a crime involving sexual assault or child molestation. For purposes of Rules 413 and 414, sexual assault includes "any conduct prohibited by 18 U.S.C. chapter 109A" and child molestation includes "any conduct prohibited by 18 U.S.C. chapter 109A and committed with a child [under the age of 14]." Fed. R. Evid. 413(d)(1); Fed. R. Evid. 414(d)(1)-(2). Here, Defendant is charged with aggravated sexual abuse of a minor under 12 years old, in violation of 18 U.S.C. § 2241(c), and abusive sexual contact with a minor, in

violation of 18 U.S.C. § 2244(a)(3), both of which are within 18 U.S.C. chapter 109A. Dkt. No. 2. The first *Benally* factor is satisfied.

*Benally* next requires that the proffered evidence involves other sexual assault or child molestation. In addition to conduct prohibited by chapter 109A, sexual assault or child molestation also includes: contact without consent between any part of a defendant's body and another person's genitals or anus or between a defendant's genitals or anus and any part of another person's body; deriving sexual pleasure or gratification from inflicting death, bodily injury, or physical pain on another person; or an attempt or conspiracy to engage in any such conduct. Fed. R. Evid. 413(d); Fed. R. Evid. 414(d).

The Government alleges Defendant "anally raped" M.B. and "rape[d] [G.T.] practically 'nightly'" both "orally, anally, [and] vaginally." Dkt. No. 25 at 3-4. The conduct related to M.B. and G.T. clearly describes physical contact which falls within chapter 109A's prohibitions. *See* 18 U.S.C. § 2246.

The other alleged actions in the Notice certainly have sexual connotations, such as Defendant exposing himself to L.J.G.; making sexual comments about underage coworkers; watching porn and masturbating in public; and telling his children that he was "horny and bored" and "incest is best." However, these acts do not fall within Rule 413/414's definitions of sexual assault or child molestation because they do not involve physical genital contact, sexual pleasure derived from death, bodily injury, or physical pain, or an attempt or conspiracy to engage in any such conduct. *See* Fed. R. Evid. 413(d); Fed. R. Evid. 414(d). While L.J.G. states that Defendant "molested" her when they were juveniles, the only specific instance L.J.G. describes is an occasion where Defendant "pulled down his pants and exposed himself to her." Dkt. No. 31-9 at 2. This is not enough to fall within chapter 109A's prohibitions. Therefore, evidence of these alleged prior

6

acts may be admissible under a different rule, such as Rule 404(b), but the Rule 413/414 inquiry for these particular acts ends here.

Finally, *Benally* requires that the proffered evidence be relevant. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less than it would be without the evidence." Fed. R. Evid. 401. Relevance of Rule 413/414 evidence is explained by its legislative history, which relied "on the premise that evidence of other sexual assaults is highly relevant to prove propensity to commit like crimes." *United States v. Batton*, 602 F.3d 1191, 1196 (10th Cir. 2010) (internal quotation marks and citation omitted); *see also* 23 Charles Alan Wright et al., *Fed. Prac. & Proc. Evid.* § 5385 (April 2020 update) ("The legislative history makes clear that the drafters and Congress believed that evidence under Rules 413, 414, and 415 is relevant to prove propensity and that this includes the defendant's propensity to commit sexual assault or child molestation.").

The Court finds that Defendant's alleged molestation of M.B. is relevant to the Government's case against Defendant concerning K.L., L.G., and Z.G. because Congress has determined that examples of past molestation are relevant to determining whether a defendant committed a charged molestation. The Court acknowledges that the allegation regarding M.B. differs from the charged conduct concerning K.L., L.G., and Z.G. First, there is an approximately twenty-year gap between the alleged molestation of M.B. and the charged conduct. Defendant was also between the ages of thirteen and fifteen at the time of the alleged molestation of M.B., while he was in his thirties at the time of the charged conduct. However, the Court finds that the circumstances of the alleged molestations—*i.e.,* that the alleged instances all involved Defendant molesting young family members—have enough similarities to make the charged conduct more probable than without the evidence regarding M.B. The Court therefore finds that the *Benally*

7

threshold requirements are satisfied for the allegation that Defendant molested M.B. The Court will continue its Rule 413/414 analysis with Rule 403 balancing concerning this allegation.

The Court, however, finds that the alleged sexual assault of G.T. is not relevant to the Government's case against Defendant concerning K.L., L.G., and Z.G. The Court notes that G.T. was Defendant's adult, long-term girlfriend during the time of the alleged sexual assault. The allegations regarding G.T. are fundamentally different from the charges related to K.L., L.G., and Z.G. The Court further finds that evidence of Defendant's alleged sexual assault of G.T. does not have the tendency to make the allegations against Defendant concerning K.L., L.G., and Z.G. any more or less probable. The Court therefore finds that the *Benally* threshold requirements are not satisfied for the alleged sexual assault of G.T. and this evidence is not admissible under Rule 413/414.

### C. *Enjady* legal standard

"[A] district court must recognize the congressional judgment that Rule [413/414] evidence is normally to be admitted." *United States v. Enjady*, 134 F.3d 1427, 1434 (10th Cir. 1988) (internal quotations omitted). However, before allowing admission, the district court must "fully evaluate the proffered evidence and make a clear record of the reasoning behind its findings" as to Rule 403 and its required balancing test. *Benally*, 500 F.3d at 1091 (quotation omitted). To assess Rule 403's requirements in the context of Rule 413/414 evidence, courts weigh: "1) how clearly the prior act has been proved; 2) how probative the evidence is of the material fact it is admitted to prove; 3) how seriously disputed the material fact is; and 4) whether the government can avail itself of any less prejudicial evidence," against "1) how likely [it is] such evidence will contribute to an improperly-based jury verdict; 2) the extent to which such evidence will distract the jury from the central issues of the trial; and 3) how time consuming it will be to prove the prior

conduct." *Enjady*, 134 F.3d at 1433.[1] No single factor of the *Enjady* test is dispositive. *United States v. Mann*, 193 F.3d 1172, 1175 (10th Cir. 1999).

### D. *Enjady* analysis of probative value[2]

#### 1. How clearly the prior act has been proven

Before considering the other *Enjady* factors, the Court must "make a preliminary finding that a jury could reasonably find that the 'other act' occurred by a preponderance of the evidence." *Benally*, 500 F.3d at 1090. Here, the Government submits that it will offer testimony from M.B. regarding Defendant's alleged molestation of M.B. Further, the Government has provided a Federal Bureau of Investigation 302 Report for M.B. Dkt. No. 31-10. The Government has presented sufficient evidence for the Court to determine that a jury could reasonably find by a preponderance that the prior acts at issue here occurred. *See United States v. Perrault*, No. 17-2558, 2019 WL 1332584, at *2 (D.N.M. Mar. 25, 2019) (concluding FBI 302 reports, other documentary evidence, and cross-corroboration between victims met *Enjady's* preponderance standard); *see also Benally,* 500 F.3d at 1092 (affirming the trial court's determination that a jury could find by a preponderance of the evidence that a rape had occurred from testimony from the alleged rape victim).

---

[1] The second *Enjady* factor—probative value—involves five additional subfactors: "(1) the similarity of the prior acts and the charged acts, (2) the time lapse between the other acts and the charged acts, (3) the frequency of prior acts, (4) the occurrence of intervening events, and (5) the need for evidence beyond the defendant's and alleged victim's testimony." *Benally*, 500 F.3d at 1090-91.

[2] The Court notes that even if the alleged sexual assault of G.T. were relevant under *Benally*, its probative value would not outweigh its prejudicial effect under *Enjady*, for the reasons previously discussed.

### 2. Factors demonstrating probative value

To fully assess the probative value of Rule 413/414 evidence, courts must consider five additional subfactors: "(1) the similarity of the prior acts and the charged acts, (2) the time lapse between the other acts and the charged acts, (3) the frequency of the prior acts, (4) the occurrence of intervening events, and (5) the need for evidence beyond the defendant's and alleged victim's testimony." *Batton*, 602 F.3d at 1198.

Here, Defendant's alleged behavior toward K.L., L.G., and Z.G. is similar to Defendant's alleged behavior toward M.B. because all the behavior described involves sexual abuse at the hands of Defendant. As discussed *supra*, Defendant's alleged behavior toward M.B. is particularly similar to the alleged behavior toward K.L., L.G., and Z.G., because all alleged victims were Defendant's young family members.

Regarding timeframes, the events described by M.B. occurred approximately twenty years before the charged conduct. However, as noted earlier, the similarity of the prior acts to the charged offenses outweighs the Court's concerns of remoteness in time. *See Batton*, 602 F.3d at 1199 (quoting *United States v. Meacham*, 115 F.3d 1488, 1495 (10th Cir. 1997)). Additionally, the frequency of the acts weighs toward probative value as M.B. described a repeated course of conduct by Defendant. Neither party has identified any intervening events or a need for evidence beyond Defendant's and M.B.'s testimony. Taken as a whole, the *Batton* subfactors—particularly the similarities between the prior acts and charged acts and the frequency of the prior acts— demonstrate probative value and weigh toward admission.

### 3. How seriously disputed the material fact is

"The more seriously disputed the material fact, the more heavily this factor weighs in favor of admissibility." *United States v. Sturm*, 673 F.3d 1274, 1286 (10th Cir. 2012). Defendant's

alleged sexual conduct toward K.L., L.G., and Z.G. are key issues in this case. This factor weighs in favor of admission.

### 4. Availability of less prejudicial evidence

The Government did not adequately address this issue but instead discussed the unfair prejudice factors. Since the Government did not fully develop this argument, the Court cannot conclude the Government does not have any less prejudicial evidence. This factor weighs against admission of the evidence. However, the other three *Enjady* factors weigh in favor of admitting the evidence. The Court concludes the evidence has probative value favoring admission. This is not the end of the inquiry. The Court must weigh the *Enjady* factors against the unfair prejudice factors to determine if the evidence should ultimately be admitted. *Enjady*, 134 F.3d at 1433.

### E. *Enjady* analysis of prejudicial dangers

#### 1. Risk of improperly-based verdict

Should the Rule 413/414 evidence be presented, the Court intends to give a proper limiting instruction. Because jurors are presumed to follow the Court's instructions, the Court finds that the evidence of Defendant's other actions would be unlikely to contribute to an improperly based jury verdict. *See United States v. McHorse*, 179 F.3d 889, 897 (10th Cir. 1999) ("A central assumption of our jurisprudence is that juries follow the instructions they receive.").

#### 2. Risk of distraction

Although the Court finds there is some risk that presenting victims of uncharged acts to the jury will distract the jury from considering the central issues at trial, the Court does not find that this risk is severe. Testimony regarding Rule 413/414 evidence may be narrowly tailored to reflect the similarities between Defendant's treatment of K.L., L.G., Z.G. and M.B. For the reasons previously discussed, Defendant's alleged conduct toward M.B. is relevant to material issues in

11

the case, and as such, the Court is not concerned that the testimony will be unduly distracting or inflammatory to the jury. Additionally, any risk of jury distraction can be minimized by a limiting instruction and the Government efficiently presenting M.B.'s testimony.

### 3. Time considerations

As discussed above, the Court believes that the strong similarities between the alleged acts may be presented efficiently and through a narrowly tailored line of questioning. Thus, the Court does not find that the Rule 413/414 evidence will be unnecessarily time consuming.

In sum, the *Benally* and *Enjady* factors weigh toward admission of evidence relating to Defendant's alleged molestation of M.B. This evidence is admissible under Rule 413/414.

## II. Other Bad Acts

The Court next turns to admissibility of the other evidence described in the Government's Notice either as intrinsic evidence or evidence admissible under Rule 404(b).

### A. Legal standard

#### 1. Intrinsic versus extrinsic evidence

When considering admissibility of prior bad acts, the Court must "distinguish between evidence that is extrinsic or intrinsic to the charged crime." *United States v. Kupfer*, 797 F.3d 1233, 1238 (10th Cir. 2015) (citing *United States v. Pace*, 981 F.2d 1123, 1135 (10th Cir. 1992), *abrogated on other grounds as recognized in United States v. Bell*, 154 F.3d 1205, 1209-10 (10th Cir. 1998)). Intrinsic evidence is "directly connected to the factual circumstances of the crime and provides contextual or background information to the jury." *United States v. Murry*, 31 F.4th 1274, 1290-91 (10th Cir. 2022) (quotations omitted). It takes many forms, such as evidence that:

- Is "inextricably intertwined with the charged conduct;"
- Occurs "within the same time frame as the activity in the conspiracy being charged;"

- Is "a necessary preliminary to the charged [crimes];"

- Provides "direct proof of the defendant's involvement with the charged crimes;"

- Is "entirely germane background information, directly connected to the factual circumstances of the crime;" or

- Is "necessary to provide the jury with background and context of the nature of the defendant's relationship to [other actors]."

*United States v. Cushing*, 10 F.4th 1055, 1075-76 (10th Cir. 2021) (citing *Kupfer*, 797 F.3d at 1238). If the Court determines evidence is intrinsic, it must conduct a Rule 403 analysis to determine that the evidence's probative value is not substantially outweighed by the danger of unfair prejudice. *United States v. Irving*, 665 F.3d 1184, 1212 (10th Cir. 2011). This is not a high bar, as "our law favors admission of all relevant evidence not otherwise proscribed [and] exclusion under [Rule 403] is an extraordinary remedy that should be used sparingly." *Id.* at 1213 (emphasis removed); *Murry*, 31 F.4th at 1291 (same).

Extrinsic evidence "is extraneous and is not intimately connected or blended with the factual circumstances of the charged offense." *Murry*, 31 F.4th at 1291. If the Court determines the evidence at issue is extrinsic, it must conduct a Rule 404(b) analysis. *Kupfer*, 797 F.3d at 1238.

### 2. Rule 404(b)

Rule 404(b) provides, in pertinent part:

> Evidence of a crime, wrong or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.…
>
> This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Fed. R. Evid. 404(b). There are four factors to assess admissibility under 404(b): (1) whether the evidence is offered for a proper purpose, (2) its relevancy, (3) whether the probative value of the

13

evidence is substantially outweighed by the prejudicial effect, and (4) the availability of a limiting instruction. *Huddleston v. United States*, 485 U.S. 681, 691 (1988); *United States v. Mares*, 441 F.3d 1152, 1156 (10th Cir. 2006); *United States v. Zamora*, 222 F.3d 756, 762 (10th Cir. 2000).

Two initial definitions are useful. Regarding the second factor, Rule 401 defines relevant evidence as having "any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Fed. R. Evid. 401. And regarding the third factor, "[e]vidence is not unfairly prejudicial simply because it is damaging to [a party's] case." *United States v. Caraway*, 534 F.3d 1290, 1301 (10th Cir. 2008) (quotation omitted). Rather, it must have "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.* In other words, evidence is unfairly prejudicial if it "tends to affect adversely the jury's attitude toward the defendant *wholly apart* from its judgment as to his guilt or innocense [sic] of the crime charged." *United States v. Ford*, 613 F.3d 1263, 1268 (10th Cir. 2010) (emphasis in original) (quotation omitted). "In weighing the probative value of evidence against unfair prejudice, district courts must give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *Murry*, 31 F.4th at 1291 (internal quotations omitted).

    **B. Analysis**

        **1. Defendant's alleged sexual comments to L.G. and Z.G.**

The Government claims that evidence of Defendant's alleged sexual comments to Z.G. and L.G. about his sex life, and comments about being "bored and horny" and "incest is best" are admissible as intrinsic evidence, or *res gestae* evidence. Dkt. No. 25 at 15. Specifically, the Government argues that Defendant's sexual comments to Z.G. and L.G. are "inextricably

intertwined with the charged crimes, notably, molesting his children and engaging in incest" and "show his sexual interest in children". *Id*. at 14-15. This Court agrees.

Defendant allegedly sexually assaulted his step-daughter and attempted to entice and coerce his biological daughters to have sex with him. Defendant's comments to his daughters, as detailed in the Government's Notice, indicates a pattern of grooming. The Tenth Circuit defines grooming as "deliberate actions taken by a defendant to expose a child to sexual material; the ultimate goal of grooming is the formation of an emotional connection with the child and a reduction of the child's inhibitions in order to prepare the child for sexual activity." *United States v. Isabella*, 918 F.3d 816, 831 (10th Cir. 2019). Defendant's comments to his daughters detailing his sex life and stating that he is "bored and horny" and that "incest is best" reduce inhibitions around relationships between adults and minors, and normalize his preferences—all of which is germane background information to Defendant's alleged conduct.

Since this is intrinsic evidence, the Court must consider Rule 403. *See Irving*, 665 F.3d at 1212. Here, the probative value of the evidence is high as Defendant's sexual comments indicates a pattern of grooming directly related to the charged conduct. Additionally, Defendant has not demonstrated that unfair prejudice would substantially outweigh that value. The "extraordinary remedy" of exclusion is not warranted here.

In the alternative, the Government also claims that Defendant's comments to Z.G. and L.G. are admissible as extrinsic evidence under Rule 404(b) to demonstrate intent, knowledge, and motivation regarding the charged conduct. Dkt. No. 25 at 12-13. Because the Court finds that these comments are admissible as intrinsic evidence, an extrinsic evidence analysis under Rule 404(b) is not necessary.

### 2. Defendant's alleged interaction with L.J.G.

The Government states that L.J.G. will testify that Defendant "molested" her when she was a juvenile. Dkt. No. 25 at 3-3. Specifically, L.J.G. will testify that when she was approximately five years old, Defendant "exposed himself to her." Dkt. No. 25 at 3-4. The Government argues that the evidence regarding L.J.G. is admissible under 404(b) because it shows a "history of molesting children and engaging in inappropriate sexual wrongs or acts" and, therefore, shows that Defendant had the intent, knowledge, and motivation for the charged conduct. *Id*. at 15. The Government argues that, in particular, this evidence shows that Defendant "abused his sister[ ] in a manner similar to that of the victims in this case" and "'suggests a similar pattern of sexual abuse of female minor relatives made possible by exploitation of familial authority.'" *Id*. at 7, 14 (quoting *Meacham*, 115 F.3d at 1495).

The Court finds that this evidence is extrinsic evidence, in that it "is extraneous and is not intimately connected or blended with the factual circumstances of the charged offense." *See Murry*, 31 F.4th at 1291. Therefore, to determine admissibility of evidence of Defendant's interaction with L.J.G., the Court applies the four-part *Huddleston* test. First, the Government must show that the evidence is offered for a proper purpose under 404(b). The Court finds that Defendant's alleged interaction with L.J.G. is properly offered to show Defendant's intent, knowledge, and motivation for the charged conduct. Defendant's alleged sexual conduct toward L.J.G., his younger step-sister, is similar to Defendant's sexual conduct toward K.L., L.G., and Z.G., his step-daughter and daughters, in that all instances involve sexual conduct by Defendant toward younger family members. For this reason, the Court also finds that evidence of Defendant's alleged interaction with L.J.G. has the tendency to make the allegations of Defendant's conduct toward K.L., L.G., and Z.G more probable than it would be without the evidence. Likewise, the

16

Court finds that the similarity between the prior act and the charged conduct outweighs concerns of remoteness in time and further finds that the probative value of the prior act outweighs any potential prejudicial effect. Finally, the Court will instruct the jury that its consideration of Defendant's alleged interaction with L.J.G. is limited to Defendant's intent, knowledge, and motivation for the charged conduct. For these reasons, evidence of Defendant's alleged interaction with L.J.G. is admissible under 404(b).

### 3. Defendant's alleged interaction with G.T.

The Government states that G.T. will testify that while dating Defendant, "he would rape her practically 'nightly'" after she had gone to bed. Dkt. No. 25 at 4. As previously noted, G.T. was Defendant's adult, long-term girlfriend during the time of the alleged sexual assault. The allegations regarding G.T. are fundamentally different from the charges related to K.L., L.G., and Z.G. The Court finds that this evidence is extrinsic evidence, in that it "is extraneous and is not intimately connected or blended with the factual circumstances of the charged offense." *See Murry*, 31 F.4th at 1291. Therefore, to determine admissibility of evidence of Defendant's interaction with G.T., the Court must apply the four-part *Huddleston* test. Because the Court has previously found that this evidence is not relevant to the charged conduct [*see supra*, p. 8], evidence of Defendant's alleged interaction with G.T. is not admissible under 404(b).

### 4. Defendant's alleged interaction with minor coworkers

The Government states that G.T. will testify regarding Defendant's interactions with minor co-workers, including "flirt[ing] with minors at his place of employment and ma[king] comments about a 14-year-old coworkers' breasts." Dkt. No. 25 at 11. The Government argues that this evidence is admissible as extrinsic evidence under 404(b) to show intent, knowledge, and motivation for the charged conduct. *Id*. at 13-14. Specifically, the Government argues that

17

evidence of Defendant's alleged interactions with other minors "show his sexual interest in children." *Id*. at 14.

To determine admissibility of evidence of Defendant's interactions with other minors, the Court applies the four-part *Huddleston* test. First, the Government must show that the evidence is offered for a proper purpose under 404(b). The Government has failed to do so here. While the Court agrees that this alleged conduct is inappropriate, the Government has not shown how Defendant's behavior toward an unrelated minor co-worker goes to Defendant's intent, knowledge, or motivation for the charged conduct. The Court finds that, under the circumstances, the bad acts described here are too tangential to the charged conduct and the Government has failed to show any specific connection between these prior acts and the charged conduct. Because the Government has failed to show that this evidence is offered for a proper purpose under 404(b), this evidence is not admissible.

### 5. Defendant's alleged sexual conduct in public places

The Government states that G.T. will testify regarding Defendant's sexual conduct in public places, including "watching porn in McDonalds, a children's restaurant" and "masturbating and watching porn in his van in public." Dkt. No. 25 at 4, 11. The Government argues that this evidence is admissible as extrinsic evidence under 404(b) to show intent, knowledge, and motivation for the charged conduct. *Id*. at 13-14. Specifically, the Government states that "masturbating in a public place where children are present . . . show[s] his sexual interest in children. *Id*.

To determine admissibility of evidence of Defendant's sexual conduct in public places, the Court applies the four-part *Huddleston* test. First, the Government must show that the evidence is offered for a proper purpose under 404(b). The Government has failed to do so here. While the

Court agrees that this alleged conduct is inappropriate, the Government has not shown how this alleged conduct would go to Defendant's intent, knowledge, or motivation for the charged conduct. For example, the Government has not alleged that Defendant was watching child pornography, nor has the Government alleged that children—specifically, his own children—were present at the time this conduct occurred. While the Government contends that McDonald's is a "children's restaurant," that is simply not enough. Because the Government has failed to show that this evidence is offered for a proper purpose under 404(b), this evidence is not admissible.

## CONCLUSION

IT IS THEREFORE ORDERED that the evidence described in the Government's Notice [Dkt. No. 25] pursuant to Federal Rule of Evidence 414, 413, and 404(b) and *res gestae* is ADMISSIBLE, IN PART, and INADMISSIBLE, IN PART, as set forth in this Order.

DATED this 5th day of December 2022.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE